UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VENUS STINNETT,                                    :
                                                   :
                              Plaintiff,           :
                                                   :          **OPINION & ORDER**
              -against-                             :          18-CV-2704 (DLI) (LB)
                                                   :
DELTA AIR LINES, INC., and                         :
QUEST DIAGNOSTICS CLINICAL                          :
LABORATORIES, INC.                                 :
                                                   :
                              Defendants.          :
------------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

On May 7, 2018, Plaintiff Venus Stinnett ("Plaintiff") filed this action against her former

employer, Delta Air Lines, Inc. ("Delta"), and Quest Diagnostics Clinical Laboratories, Inc.

("Quest"), a drug testing company, (collectively, "Defendants"). (Complaint ("Compl."), Dkt.

Entry No. 1-4.) Plaintiff alleges that Delta discriminated against her on the basis of her disability

in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296, *et*

*seq.*, and on the basis of her gender, in violation of the New York City Human Rights Law

("NYCHRL"), N.Y.C. Admin. Code §§ 8–107, *et seq.* (*See*, Compl. ¶¶ 146–49, 156–59.) Plaintiff

also asserts claims for retaliation and aiding and abetting against Delta in violation of both the

NYSHRL and the NYCHRL. (*See*, Compl. ¶¶ 150–55, 160–66.) Additionally, Plaintiff brings

claims under the NYCHRL for interference with protected rights and employer's liability against

Delta. (*See*, Compl. ¶¶ 166–72.) Finally, Plaintiff alleges common law negligence against

Defendants and breach of contract against Delta. (*See*, Compl. ¶¶ 173–88.)

Defendants moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

the Complaint for failure to state a claim upon which relief may be granted. (*See*, Delta's Mem.

in Supp. of Mot. to Dismiss ("Delta's Mem."), Dkt. Entry No. 11; Quest's Mem. in Supp. of Mot. to Dismiss ("Quest's Mem."), Dkt. Entry No. 13.) For the reasons set forth below, Defendants' motions to dismiss are granted.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff is a female who was employed by Delta as a flight attendant for approximately seven years. (Compl. ¶¶ 40, 128.) Plaintiff began her employment with Delta around May 2007 and was terminated by a letter dated June 19, 2014. (*Id*.)

Plaintiff alleges that throughout the course of her employment with Delta, she suffered from two disabilities: Polycystic Ovarian Syndrome, which renders her infertile and unable to take a pregnancy to term, and asthma. (*Id*. ¶ 44–45.) Because of her infertility, Plaintiff suffered several miscarriages, and, in 2007, she underwent fertility treatments to facilitate pregnancy. (*Id*. ¶ 54.) Pursuant to the Family Medical Leave Act ("FMLA"), Delta approved Plaintiff's absence to undergo fertility treatments. (*Id*. ¶¶ 54–55.) Plaintiff was prescribed amoxicillin as a part of her infertility treatment plan. (*Id*. ¶ 52.) Plaintiff alleges that she informed Delta of her disabilities and the medications she was taking as part of her fertility treatment plan and notified Delta every time she was prescribed a new medication. (*Id*. ¶¶ 51, 53, 56.) Plaintiff contends that she occasionally experienced nosebleeds in relation to her Polycystic Ovarian Syndrome. (*Id*. ¶ 47–48.)

The incident at the core of this suit occurred on or about April 23, 2014, when Plaintiff disembarked at John F. Kennedy International Airport ("JFK") and Delta Manager, David

---

[1] The following facts are drawn from the Complaint filed in this action and are presumed true for purposes of determining the motions to dismiss.

Gilmartin ("Gilmartin"), directed her to take an alcohol and drug test. (*Id.* ¶¶ 83, 85.) Plaintiff tested positive for cocaine and alcohol. (*Id.* ¶ 94.) Plaintiff alleges two reasons for her positive drug test: (1) she was prescribed (and taking) a Cocaine HCL 4% topical solution to treat a "severe nosebleed" (*Id.* ¶ 99); and (2) she was prescribed (and taking) amoxicillin, which can generate a false positive for cocaine. (*Id.* ¶ 100.) As to her positive alcohol test results, Plaintiff alleges that they "were a result of Defendant Quest's negligence" because she was "not under the influence of . . . alcohol," (*Id.* ¶¶ 96, 86.), though she admits to consuming alcohol the night prior to her flight back to JFK and Plaintiff's flight crew picked her up for duty at 4:30 a.m. (*Id.* ¶¶ 68–72, 74.)

Plaintiff contends that, subsequent to the positive drug and alcohol test, Delta informed her that she would be reinstated if she attended a rehabilitation program. (*Id.* ¶ 110.) Plaintiff successfully completed a rehabilitation program, but Delta did not reinstate her. (*Id.* ¶¶ 117–18.) Plaintiff claims that Edward Leon ("Leon"), a flight service manager for Delta, informed her that Delta reinstated several employees after they had completed a rehabilitation program, including six male flight attendants who "were known abusers of drugs and alcohol." (*Id.* ¶¶ 121–23.) Plaintiff alleges that Leon told her that these six men met Rose Moliner ("Moliner"), who "assists employees who have completed rehabilitation with reinstatement." (*Id.* ¶ 117–18, 122.) Plaintiff claims that she "never was told to communicate with Moliner." (*Id.* ¶ 123.)

Plaintiff alleges that "[o]n or about June 19, 2014, Defendant Delta mailed Plaintiff a notice advising her that she was terminated," (¶ 128), and "Plaintiff was not employed by Defendant Delta on or about October 11, 2014," (*Id.* ¶ 129).

### B.	Procedural Background

#### 1.	*Stinnett I*

This is the Parties' second time before this Court concerning discrimination and other employment claims arising out of Plaintiff's termination.  On August 15, 2016, Plaintiff brought an action in this Court ("*Stinnett I*") alleging claims for:  employment discrimination on the basis of her gender under Title VII of the Civil Rights Act of 1964 ("Title VII"), the NYSHRL, and the NYCHRL; employment discrimination on the basis of her disability under the Americans with Disabilities Act ("ADA"), the NYSHRL, and the NYCHRL; retaliation under Title VII, the ADA, the NYSHRL, and NYCHRL; hostile work environment; wrongful discharge; and negligence. (*See generally*, Amended Complaint, 1:16-cv-04554-DLI-LB, Dkt. Entry No. 22 ("*Stinnett I* Compl.")) Plaintiff's allegations in *Stinnett I* relied largely on the same factual grounds at issue here. (*Id*.)

On September 30, 2017, this Court granted Defendants' motions to dismiss, holding that Plaintiff failed to state a claim under Title VII or the ADA.  *Stinnett v. Delta Air Lines, Inc.* ("*Stinnett I* Opinion"), 278 F. Supp.3d 599, 617–18 (E.D.N.Y. 2017).  The Court found that Plaintiff did not plead facts sufficient to give rise to an inference of discrimination by Delta on the basis of her gender or disability.  *Id*. at 611–12, 614–16.  The Court dismissed Plaintiff's Title VII and ADA discrimination claims against Quest because she was not employed by Quest.  *Id*. at 610–11, 613.  After dismissing these federal claims, the Court declined to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, and common law claims.  *Id*.

#### 2.	*Stinnett II*

On January 29, 2018, Plaintiff filed a complaint in the Supreme Court of the State of New York, Kings County, commencing this action ("*Stinnett II*").  (*See*, Compl.)  Defendant Quest first

removed this case, with Delta's consent, to this Court on March 7, 2018. (*See*, Quest's Not. of Removal, Dkt. Entry No. 1.)

On May 18, 2018 and May 24, 2018, respectively, Defendants Delta and Quest moved separately to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See generally*, Delta's Mem.; Quest's Mem.) Delta contends that dismissal is warranted because Plaintiff has not alleged sufficient facts to state a claim for discrimination on the bases of sex or disability; retaliation; aiding and abetting; or common law claims.[2] (*See generally*, Delta's Mem.) Quest contends that dismissal of Plaintiff's negligence claim is warranted, as Quest did not owe Plaintiff her complained-of duty. (*See generally*, Quest's Mem.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels

---

[2]    Delta acknowledges that "Plaintiff also brings claims for aiding and abetting under the Executive Law and NYCHRL," but does not address these claims, as the "allegations are not referenced elsewhere in the Complaint." (Delta's Mem. at 2 n.1.)

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## B.    Issue Preclusion

"The doctrine of issue preclusion (also known as 'collateral estoppel') 'prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.'" *Forrester v. Corizon Health, Inc.*, 278 F. Supp.3d 618, 625 (E.D.N.Y. 2017), *aff'd*, 752 F. App'x 64 (2d Cir. 2018) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). While Defendants did not raise it as an affirmative defense, "a district court may raise the issue of collateral estoppel *sua sponte*." *Swiatkowski v. Citibank*, 745 F. Supp.2d 150, 169 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (citing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)).

Collateral estoppel bars a plaintiff's claim when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Forrester*, 278 F. Supp.3d at 625 (quoting *Marvel Characters, Inc.*, 310 F.3d at 288–89). *See also*, *Montana v. United States*, 440 U.S. 147 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.") (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

"If the issues [are] not identical, there is no collateral estoppel." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (alteration in original) (quoting *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999)). "[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *Forrester*, 278 F. Supp.3d at 625 (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1293, 1306 (2015) (alteration in original)).

## III.    DISCUSSION

### A.    Discrimination Claims

As a preliminary matter, it is necessary to clarify the nature of Plaintiff's discrimination claims. Her opposition papers discuss "discrimination on the basis of her sex and gender under state law," (Plaintiff's Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 8–11, Dkt. Entry No. 18), but her Complaint alleges disability discrimination under state law. (Compl. ¶ 148.) Similarly, in her brief, Plaintiff contends Delta "refus[ed] to accommodate Plaintiff's disability" in violation of the NYCHRL (Pl.'s Opp'n at 14), but her cause of action for discrimination under the NYCHRL

alleges only gender discrimination. (Compl. ¶ 158.) Accordingly, the Court will analyze Plaintiff's disability discrimination claim under the NYSHRL and her gender discrimination claim under the NYCHRL, consistent with the causes of action set forth in Plaintiff's Complaint.

## 1. Disability Discrimination Claim Under the NYSHRL

The Court finds that Plaintiff's disability discrimination claim under the NYSHRL[3] is barred by collateral estoppel. The issue of disability discrimination raised in *Stinnett I* under the ADA is identical to the issue raised in this case under the NYSHRL, and actually was litigated. In *Stinnett I*, Plaintiff alleged that her disability was infertility related to her Polycystic Ovarian Syndrome, and that "Delta discriminated against her on the basis of her infertility." *Stinnett I*, 278 F. Supp.3d at 614. Plaintiff alleges no changes in the controlling facts or circumstances that might alter the Court's assessment of the case. (*See generally*, *Stinnett I* Compl.; Compl.) Similarly, there are no differences in the relevant legal standards, as "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004), *on remand* 2005 WL 1606341; *See also*, *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (noting that a plaintiff's NYSHRL disability discrimination claim "survives or fails on the same basis as [her] ADA claim").

The three remaining elements of the collateral estoppel framework are also satisfied. First, the Court in *Stinnett I* "actually decided" that "Plaintiff [did] not [plead] facts sufficient to give rise to an inference of disability discrimination." *Stinnett I*, 278 F. Supp.3d at 615. Second,

---

[3] Under the NYSHRL, it is "an unlawful discriminatory practice [f]or an employer . . . because of an individual's . . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).

Plaintiff had a full and fair opportunity to litigate her ADA claim. Third, its resolution was necessary to support a valid and final judgment on the merits of Plaintiff's ADA employment discrimination claim.

Even if collateral estoppel did not apply to Plaintiff's disability discrimination claim, dismissal would be warranted. To survive a motion to dismiss, a plaintiff must plead facts giving rise to a plausible inference that "the adverse action was imposed *because of* her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (emphasis added). Plaintiff does not plausibly connect her covered status to any adverse employment action. In other words, Plaintiff does not demonstrate a link between her disability and Delta's decision to terminate her employment.

Plaintiff alleges her disability is infertility, yet she admits that she tested positive for cocaine because of the medication prescribed to her to stop a bloody nose. (*See*, Compl. ¶ 99 ("Plaintiff tested positive for cocaine because she had used a Cocaine HCL 4% topical solution as prescribed by her doctor to treat a severe nosebleed.")). Thus, the crux of Plaintiff's argument pertains not to her infertility, but to her use of a substance that resulted, or could have resulted, in a positive drug test. Even if Plaintiff's severe nosebleeds were a side effect of her infertility, her claims implicate the circumstances surrounding her disability and her subsequent conduct, rather than the disability itself. (*See*, Compl. ¶ 102 ("Had Plaintiff not had a [] pregnancy-related condition, she would have never tested positive for cocaine.")).

Courts have recognized that there are circumstances in which termination is not based on disability, but rather an employee's misconduct. *See*, *Fahey v. City of New York*, 2012 WL 413990, at *9 (E.D.N.Y. Feb. 7, 2012) ("The ADA does not excuse workplace misconduct because the misconduct is related to a disability") (quoting *Canales–Jacobs v. N.Y. State Office of Ct. Admin.*,

640 F. Supp.2d 482, 500 (S.D.N.Y. 2009)); *Cowan v. MaBSTOA*, 961 F. Supp. 37, 41–42 (E.D.N.Y. 1997) (finding that the university's termination of an employee for driving under the influence of alcohol was permissible because substance abusers "are not exempted from reasonable rules of conduct") (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843 (6th Cir. 1995); *See also*, *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995) ("Courts have recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability.").

Because Plaintiff has not pled facts sufficient to give rise to an inference of disability discrimination, Plaintiff's NYSHRL disability discrimination claim is dismissed.

### 2.    Reasonable Accommodation Claim Under the NYSHRL

Plaintiff brings a second discrimination claim under the NYSHRL,[4] alleging that Delta failed to provide reasonable accommodations for her disability.  (*Id*. ¶¶ 147–48.)  This claim is barred by collateral estoppel because Plaintiff raised this "identical issue" in *Stinnett I* and "the issue was actually litigated and decided."  *Forrester*, 278 F. Supp.3d at 625 (quoting *Marvel Characters, Inc.*, 310 F.3d at 288–89).

In *Stinnett I*, Plaintiff alleged that "Delta failed to accommodate her disability when it failed to consider her medication when they terminated her for a positive drug and alcohol test."  *Stinnett I*, 278 F. Supp.3d at 615.  She further contended that "[p]rior to the test [that] subsequently resulted in her termination, she again asked Defendant Delta to accommodate her condition and to take into consideration her drug regimen and [Delta] ignored her request."  *Id*. (internal citation and

---

[4]    The NYSHRL "make[s] it unlawful . . . for any employer to fail to provide reasonable accommodations for known disabilities of their employees."  *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp.3d 400, 412 (S.D.N.Y. 2014); N.Y. Exec. Law § 296(3)(a) ("It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee . . . in connection with a job or occupation sought or held[.]").

quotation marks omitted). Here, Plaintiff makes an identical claim predicated on an identical set of facts, arguing that "Delta failed to accommodate [her] . . . pregnancy-related condition and failed to take into consideration her drug regimen." (Compl. ¶ 107; *See also*, Pl.'s Opp'n at 11 ("Plaintiff asked [Delta] to accommodate her Polycystic Ovarian Syndrome and consider her drug regimen in advance of her drug test. . . . Delta was required to take the Cocaine HCL 4% into consideration when Plaintiff tested positive for cocaine.")).

Reasonable accommodation claims under the NYSHRL are analyzed under the same four-part framework applied to federal claims under the ADA. *See*, *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("A claim of disability discrimination under the New York State Human Rights Law . . . is governed by the same legal standards as govern federal ADA claims.") (quoting *Graves*, 457 F.3d at 184 n.3). Thus, using the same set of facts and the same legal standard, the Court in *Stinnett I* "actually decided" that "Delta was not required to take the Cocaine HCL 4% into consideration when Plaintiff tested positive for cocaine because an employer is not required to accommodate an impairment that is not considered a disability." *Stinnett I*, 278 F. Supp.3d at 615. Plaintiff had a full and fair opportunity to litigate her reasonable accommodation claim in *Stinnett I*, and its resolution was necessary to support a valid and final judgment on the merits. *Id*.

Even if collateral estoppel did not apply to Plaintiff's reasonable accommodation claim, dismissal would be warranted. Plaintiff contends that Delta "ignored her request . . . to accommodate her Polycystic Ovarian Syndrome and consider her drug regimen in advance of [the] drug test" that ultimately resulted in her termination. (Pl.'s Opp'n at 15; *See also*, Compl. ¶¶ 88–93.) At no point, however, does Plaintiff link her Cocaine HCL 4% prescription to her fertility treatments for her recognized disability. In fact, Plaintiff's doctor submitted two letters to Delta

directly indicating that he prescribed Plaintiff "Cocaine HCL 4% topical solution to stop her nosebleed." (Compl. ¶¶ 109, 112.) Plaintiff's disability is infertility, and Plaintiff does not allege at any point that her disability is excessive nosebleeds.

Moreover, Plaintiff contends that she "informed Defendant Delta every time she was prescribed a new medication related to her disability" and that "U.S. doctors had prescribed [her] Cocaine HCL 4%[.]" (Compl. ¶¶ 53, 65.) Thus, Cocaine HCL 4% was not a new prescription at the time of the incident. By Plaintiff's own logic, had her prescription for Cocaine HCL 4% been related to her disability, she already would have informed Delta and "put the prescription[] in [her] file." (Compl. ¶ 87.)

Delta was not required to take Cocaine HCL 4% into consideration when Plaintiff tested positive for cocaine because the prescription was not part of her fertility treatments for her recognized disability. Accordingly, Plaintiff's reasonable accommodation claim is dismissed.

### 3. Gender Discrimination Claim Under the NYCHRL

The NYCHRL makes it "an unlawful discriminatory practice [f]or an employer . . . because of the actual or perceived . . . gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(3).[5] While the NYCHRL is textually similar to its federal and state counterparts, "gender discrimination claims under the [NYCHRL] are subject to a more liberal judicial construction than those brought under state or federal law." *Moccio v. Cornell Univ.*, 889 F. Supp.2d 539, 581 (S.D.N.Y. 2012), *aff'd*, 526 F. App'x 124 (2d Cir. 2013); *See also*, *Sotomayor*

---

[5] Plaintiff's NYCHRL claims are not automatically precluded by *Stinnett I*. "[T]he Second Circuit has held that the [Local Civil Rights Restoration Act, N. Y.C. Local L. No. 85] requires that district courts analyze NYCHRL claims separately from, and independently of, analogous federal claims." *Forrester*, 278 F. Supp.3d at 629 (citing *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 410 (2d Cir. 2015) (per curiam); *See also*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Accordingly, the Court addresses these claims *de novo*.

*v. City of New York*, 862 F. Supp.2d 226, 257 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (When interpreting the NYCHRL, courts are required to "give the statute an independent and more liberal construction than its federal and state counterparts."). A plaintiff bringing a discrimination claim under the NYCHRL still must allege facts that are "more than conclusory or speculative to survive a motion to dismiss." *Bell v. McRoberts Protective Agency, Inc.*, 2016 WL 7192083, at *5 (S.D.N.Y. Dec. 12, 2016). "[A] complaint may fail to state a claim under Title VII and NYSHRL but still be allowed to proceed under NYCHRL. Nonetheless, a complaint will not always pass muster under NYCHRL's more lenient standard." *Soloviev v. Goldstein*, 104 F. Supp.3d 232, 250 (E.D.N.Y. 2015).

"Notwithstanding this more liberal standard of review . . . gender discrimination claims brought pursuant to . . . [the NYCHRL] are analyzed under the Title VII framework." *Moccio*, 889 F. Supp.2d at 581 (internal quotation marks omitted); *See also, Sotomayor*, 862 F. Supp.2d at 252. Under the four-part burden-shifting *McDonnell Douglas* framework, a plaintiff alleging sex discrimination must establish that: "(1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) there is 'at least minimal support for the proposition that [her] employer was motivated by discriminatory intent.'" *Osborne v. Moody's Inv'rs Serv., Inc.*, 2018 WL 1441392, at *3 (S.D.N.Y. Mar. 22, 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). At the motion to dismiss stage, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated[.]" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). To overcome a motion to dismiss, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 84 (quoting *Littlejohn*, 795 F.3d at 306).

The first three elements of the *McDonnell Douglas* framework are not in dispute. As a female, Plaintiff is a member of a protected class. (Compl. ¶ 35.) Further, Delta does not dispute Plaintiff's qualifications. (*See generally*, Delta's Mem.; Delta's Reply, Dkt. Entry No. 19.); *See also*, *Whyte v. Nassau Health Care Corp.*, 969 F. Supp.2d 248, 255 (E.D.N.Y. 2013) ("[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.") (internal citation and quotation marks omitted). Plaintiff also satisfies the third prong of the *McDonnell Douglas* framework, as Delta fired Plaintiff from her position, and termination constitutes an adverse employment action. (Compl. ¶¶ 128–29.) *See*, *Vega*, 801 F.3d at 85. Thus, only the fourth prong of the *McDonnell Douglas* framework is at issue.

Plaintiff has not asserted facts that give plausible support to the only *McDonnell Douglas* factor at issue here: whether her termination "occurred under circumstances giving rise to an inference of discrimination." *Littlejohn*, 795 F.3d at 312. Plaintiff alleges NYCHRL gender discrimination under the same theory that this Court rejected under Title VII, namely, that Delta treated her less favorably than similarly situated male employees. *See*, *Stinnett I*, 278 F. Supp.3d at 611–12.

The Court rejects this theory for the same reasons discussed in *Stinnett I*, even taking into account the more liberal pleading standard of the NYCHRL. Plaintiff contends that Delta discriminated against her on the basis of her gender (Compl. ¶ 130.), yet she pleads facts that strongly indicate she was fired, not because of a discriminatory motive on the part of Delta, but because of her own actions before and during the performance of her duties. Specifically, Plaintiff admits that: (1) she consumed alcohol the night prior to her flight and was picked up by her flight crew at 4:30 a.m. to report to duty, (2) she used Cocaine HCL 4% during the flight to treat a "severe

nosebleed," and (3) after disembarking the plane at JFK, she tested positive for cocaine and alcohol intoxication. (*Id*. ¶¶ 60–62, 68–71, 74, 82–83, 94.) Even if Plaintiff's positive result for alcohol intoxication was a laboratory error on the part of Quest as she alleges (*Id*. ¶ 124.), she still admits to using a substance containing cocaine on the flight, which naturally would result in a positive test result for cocaine, thereby violating Delta's policy. (*Id*. ¶¶ 82, 94.)

Moreover, Plaintiff alleges few facts that would give rise to a plausible inference of discriminatory motive on behalf of Delta, relying instead on conclusory statements about six male employees "who were known abusers of drugs and alcohol [and] were reinstated." (*Id*. ¶ 122.) As the Court found in *Stinnett I*, "[t]hough Plaintiff alleges that both she and the men were flight attendants, there are few allegations beyond that which qualifies the employees as similarly situated to Plaintiff in all material respects." *Stinnett I*, 278 F. Supp.3d at 612. (Compl. ¶ 121.) In fact, by Plaintiff's own admission, "the men were different than her in a material respect, namely that they had a drug or alcohol disability, while Plaintiff did not." *Stinnett I*, 278 F. Supp.3d at 612. (Compl. ¶¶ 111, 121.) Similarly, "Plaintiff fails to demonstrate that the conduct she engaged in was similar to the employees in question," nor does she "allege that the male employees in question engaged in the same conduct that resulted in their termination, rehabilitation, and subsequent reinstatement." *Stinnett I*, 278 F. Supp.3d at 612.

Plaintiff's claim of discriminatory intent hinges on the allegation that the six male employees "met with Rose Moliner [who] assists employees who have completed rehabilitation with reinstatement," whereas "Plaintiff never was told to communicate with Moliner." (*Id*. ¶ 123.) These allegations are simply too sparse for the Court to determine that Plaintiff has pled a plausible claim. Plaintiff does not clarify if Moliner was an employee of Delta, nor does she explain who, if anyone, instructed the six male employees to meet with Moliner. (*See*, Compl. ¶¶ 121–23.)

Furthermore, Plaintiff does not allege facts showing that Moliner reinstated, or aided in the reinstatement, of these six male Delta employees, nor does she allege any facts to demonstrate that it was the policy of Delta to have employees who completed rehabilitation programs meet with Moliner before reinstatement. *See generally*, Compl. ¶¶ 121–23 (wherein Plaintiff alleges only that "Edward Leon, a flight service manager for Delta, informed Plaintiff that six (6) men who were known abusers of drugs and alcohol were reinstated" after meeting with Moliner). *See also, Osborne*, 2018 WL 1441392, at *5 (dismissing plaintiff's Title VII, NYSHRL, and NYCHRL gender discrimination claims where "Plaintiff's complaint lack[ed] specificity regarding any comparators.").

Plaintiff has failed to "plead facts sufficient to support an inference that [s]he has been treated less well at least in part *because of* a protected trait." *Bright-Asante v. Saks & Company, Inc.*, 242 F. Supp.3d 229, 242 (S.D.N.Y. 2017) (internal quotation marks omitted) (emphasis in original); *See also*, *Makinen v. City of N.Y.*, 167 F. Supp.3d 472, 483 (S.D.N.Y. 2016) ("[T]o establish liability under the NYCHRL, 'the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent.'") (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). The Court finds that Plaintiff has failed to establish a plausible inference that Delta acted with discriminatory intent because Plaintiff's conclusory allegations have not "pushed [her] claims across the line from conceivable to plausible." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)). *See also*, *Soloviev*, 104 F. Supp.3d at 250 (dismissing a complaint for employment discriminatory on the basis of race, gender, and national origin under the NYCHRL because Plaintiff failed to demonstrate that his "termination was *caused by* a discriminatory motive on the part of his employers on the basis of

his race, gender, or national origin, *rather than by other actions on the part of [Plaintiff]*") (second emphasis added). Even when considering the more liberal pleading standard of the NYCHRL, the Court finds that Plaintiff's conclusory allegations do not give rise to a plausible inference of discriminatory intent. Accordingly, Plaintiff's gender discrimination claim under the NYCHRL is dismissed.

### C. Retaliation Claims Under the NYSHRL and NYCHRL

Plaintiff alleges that Delta terminated her in retaliation for seeking a reasonable accommodation for her disability. (Pl.'s Opp'n at 12; Compl. ¶¶ 88–93, 152.) Specifically, Plaintiff alleges that Delta ignored her request "to accommodate her Polycystic Ovarian Syndrome [by] consider[ing] her drug regimen in advance of her drug test" and "decided to terminate Plaintiff less than two months after [her] request[]." (Pl.'s Opp'n at 12–13; Compl. ¶¶ 88–93.)

In *Stinnett I*, Plaintiff offered two bases for her ADA retaliation claim, namely that Delta terminated her for (1) requesting FMLA leave and (2) seeking a reasonable accommodation for her disability. *Stinnett I*, 278 F. Supp.3d at 615. While Plaintiff no longer alleges retaliation on the basis of FMLA leave, she brings an identical claim for retaliation premised on her request for a reasonable accommodation. (*See*, Pl.'s Opp'n at 13 ("Delta decided to terminate Plaintiff less than two months after she requested that they accommodate her disability by considering her drug regimen in advance of her drug test.").) The Court finds that this claim is precluded under collateral estoppel because it "was fully and fairly litigated" in *Stinnett I* under identical facts and the same ADA legal standard. *See*, *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (applying ADA analysis to plaintiff's retaliation claims under the ADA and NYSHRL); *Moccio*, 889 F. Supp.2d 582 (noting that "courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp*" for retaliation claims under the NYSHRL and NYCHRL).

Even if collateral estoppel did not preclude Plaintiff's NYSHRL retaliation claim, it still would fail, for the same reasons that her NYCHRL claim also fails. To establish a prima facie case of retaliation under the ADA and NYSHRL, an employee must demonstrate that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Pediford-Aziz v. City of New York*, 170 F. Supp.3d 480, 485 (E.D.N.Y. 2016) (quoting *Treglia*, 313 F.3d at 719). While "the retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart" (*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010)), a plaintiff claiming retaliation under the NYCHRL must still demonstrate "that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action." *Moccio*, 889 F. Supp.2d at 592 (citing *Pilgrim v. McGraw–Hill Cos.*, 599 F. Supp.2d 462, 469 (S.D.N.Y. 2009)).

While requesting a reasonable accommodation is a protected activity for purposes of a retaliation claim, *see*, *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002), Plaintiff's retaliation claim is meritless because Delta was not required to take into consideration the Cocaine HCL 4% she was using for excessive nosebleeds that resulted in her positive drug test. By Plaintiff's own admission, she was prescribed and taking Cocaine HCL 4% to treat excessive nosebleeds, not to treat her alleged infertility disability. (Compl. ¶¶ 109, 112.) Moreover, Plaintiff concedes that was terminated for failing a drug and alcohol test, not because she asked Delta to take her medication into consideration. (*See generally*, Compl.; Pl.'s Opp'n.) Accordingly, Plaintiff's retaliation claims are dismissed.

### D. Aiding and Abetting Claims Under the NYSHRL and NYCHRL

Plaintiff brings aiding and abetting claims against Delta pursuant to the NYSHRL and NYCHRL. (Compl. ¶¶ 153–55, 164–66.) Under both state and city law, it is "an unlawful discriminatory practice" to aid, abet, incite, compel, or coerce discriminatory or retaliatory conduct. N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). "The [NYC] Administrative Code uses virtually identical language . . . and is subject to the same analysis as the [NY] Executive Law." *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp.2d 103, 113 (E.D.N.Y. 2001).

As a preliminary matter, Plaintiff has abandoned her aiding and abetting claims by failing to address them in her opposition papers. *See*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("A plaintiff abandons a claim where [s]he raises it in the complaint but remains silent on the issue elsewhere in the record."). "The Court deems Plaintiff's silence as a concession that Plaintiff is abandoning her claim." *Stinnett I*, 278 F. Supp.3d at 617.[6]

Even assuming that Plaintiff did not abandon her aiding and abetting claims, Plaintiff's allegations nonetheless fail, as the Court already has dismissed Plaintiff's primary discrimination claims under the NYSHRL and NYCHRL, which are prerequisites for bringing successful aiding and abetting claims. *See*, *Griffin v. Sirva, Inc.*, 291 F. Supp.3d 245, 254 (E.D.N.Y. 2018) ("The reason section 296(6) [of the NYSHRL] requires a primary violation is intuitive—[w]here there has been no discrimination, there is nothing to aid or abet." (internal citation and quotation marks omitted)). Plaintiff's claims for aiding and abetting under the NYSHRL and NYCHRL are dismissed.

---

[6] As with Plaintiff's aiding and abetting claims, Plaintiff has abandoned her interference with protected rights claim by failing to address it outside of her complaint. (Compl. ¶¶ 167–69; Pl.'s Opp'n.) Accordingly, her claim for interference with protected rights under the NYCHRL is dismissed.

### E. Employer's Liability Claim Under the NYCHRL

Plaintiff's final claim under the NYCHRL is for employer's liability against Delta. (Compl. ¶¶ 170–72.) The NYCHRL specifies three circumstances that may give rise to employer's liability:

> [i] where the offending employee "exercised managerial or supervisory responsibility" . . . [ii] where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and [iii] where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent" [it].

*Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010) (quoting N.Y.C. Admin. Code § 8107(13)). "The NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees." *Gorman v. Covidien, LLC*, 146 F. Supp.3d 509, 529 (S.D.N.Y. 2015) (quoting *Garrigan v. Ruby Tuesday, Inc.*, 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014)). Thus, in order to bring a successful employer's liability claim, a plaintiff must identify an employee, agent, or independent contractor who has engaged in discriminatory conduct. N.Y.C. Admin. Code § 8-107(13).

Here, Plaintiff does not address her employer's liability claim outside of her Complaint, and, as a consequence, fails to identify an offending employee, agent, or independent contractor of Delta. (*See generally*, Compl.; Pl.'s Opp'n.) Without an identified offending employee, the Court must dismiss Plaintiff's claim for employer's liability.

### F. Common Law Claims

#### 1. Applicable Law

The parties have briefed their arguments surrounding Plaintiff's common law claims for negligence and breach of contract based on New York law and do not appear to dispute its applicability. Accordingly, the Court applies New York law to Plaintiff's negligence and contract

claims. *See*, *Karnauskas v. Columbia Sussex Corp.*, 2012 WL 234377 (S.D.N.Y. Jan. 24, 2012) (applying Arizona law because parties did not dispute choice of law and both applied Arizona law in their briefs); *Mason Tenders Dist. Council of Greater N.Y. v. Concore Equip., Inc.*, WL 5548912 (S.D.N.Y. Nov. 10, 2011) (parties did not dispute that New York law applied); *Silverman Partners LP v. Verox Group*, 2010 WL 2899438 at *9 n.4 (S.D.N.Y. July 16, 2010).

### 2. Negligence Claims Against Delta and Quest

To bring a successful negligence claim under New York law, Plaintiff must establish that (1) Defendants owed her a duty; (2) Defendants breached that duty; and (3) Defendants' breach proximately caused her injury. *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citing *Merino v. New York City Transit Auth.*, 218 A.D.2d 451, 456 (1st Dept. 1996)). Here, Plaintiff alleges that "Defendants owed a duty to Plaintiff to perform their duties without causing damage to Plaintiff's livelihood," and that they "breached their duty by [] performing [a] drug test without using all the information necessary to gain an accurate measure of Plaintiff's blood." (Compl. ¶¶ 174–75.) However, these claims are based on the unsupported premise that "Defendants' conduct proximately caused the release of incorrect information that caused Plaintiff to be terminated" and patently misconstrue the federal regulatory scheme that requires employers to "test each employee who performs a safety-sensitive function and who is reasonably suspected of having used a prohibited drug." (*Id.* ¶ 177); 14 C.F.R. § 120.109(d).

First, Plaintiff pleads the logical fallacy that her positive test result for cocaine was a "false positive," while admitting to using Cocaine HCL 4% during the performance of her duties. (Compl. ¶¶ 62, 67, 82, 85, 99.) She similarly contends that her positive alcohol "blood tests" were "a result of Quest's error." (*Id.* ¶¶ 96, 18.) Quest, however, did not test Plaintiff's blood for alcohol, as federal regulations require that alcohol tests be conducted on breath or saliva samples.

49 C.F.R. § 40.277 ("[O]ther types of alcohol tests (e.g., blood and urine) are not authorized for testing done under this part. Only saliva or breath for screening tests and breath for confirmation tests using approved devices are permitted."). (*See also,* Quest's Mem. at 12 ("Quest Diagnostics did not perform alcohol testing of Stinnett or of any specimen submitted by Stinnett.")) Thus, Plaintiff offers no support for her contention that Defendants relied on "incorrect information." (Compl. ¶ 177.)

Second, Plaintiff argues that Delta had a duty to provide Quest "with the proper information regarding Plaintiff's medical history," and that Quest was required to "perform[] a drug test . . . using all the information necessary to gain an accurate measure of Plaintiff's blood." (Compl. ¶¶ 179, 175.) These alleged duties conflict with federal law. Under Federal Aviation Administration ("FAA") and Department of Transportation ("DOT") regulations, an employer is prohibited from providing any medical history information to the testing laboratory. 40 C.F.R. § 40.45(d). Furthermore, Plaintiff offers no evidence indicating that she informed Quest of her medical history, and, even if she had provided such information, it would have been a violation of federal law, as: (1) donors must be anonymous to testing laboratories, and (2) only a certified Medical Review Officer ("MRO") "[a]cting as an independent and impartial 'gatekeeper' and advocate for the accuracy and integrity of the drug testing process" may consider medical history information provided by employees. 49 C.F.R. §§ 40.45(d), 40.123. Had Plaintiff provided her medical history to a certified MRO, the MRO would have assumed the duty to take all reasonable and necessary steps to verify the authenticity of the information provided, yet Plaintiff made no such attempt. *Id.* § 40.121(a)-(b). Thus, Delta had no duty to provide Plaintiff's medical history to Quest, and Quest had no duty to determine whether Plaintiff's alleged medical history provided a legitimate explanation for her positive cocaine result.

Finally, New York law expressly limits the scope of the duty of care owed by a drug testing laboratory to an employee donor to circumstances involving a laboratory's "failure to adhere to professionally accepted scientific testing standards in the testing of the biological sample." *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 826 (2016) (resolving a certified question from the Second Circuit Court of Appeals as to whether FAA and DOT regulations establish a duty of care for drug testing laboratories under New York negligence law). *See also, Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1, 8 (2013) (finding that plaintiff's "particularized claim that he passed two contemporaneous drug screens that utilized proper and scientifically reliable testing protocols" was sufficient to overcome a motion to dismiss by defendant laboratory). Here, Plaintiff pleads no facts alleging that Quest failed to use professionally accepted scientific methodology, nor does she offer particularized, scientifically reliable evidence to rebut Quest's cocaine positive test result.

Accordingly, Plaintiff's negligence claims against Delta and Quest fail.

## 2. Breach of Contract Claim Against Delta

Plaintiff brings a common law breach of contract claim against Delta, under the theory that "Delta promised to reinstate Plaintiff as a flight attendant [] if she attended an alcohol and drug rehabilitation program," and that "by entering an alcohol and drug rehabilitation program," she accepted Delta's offer. (Compl. ¶¶ 110, 117.) Plaintiff further alleges that Delta failed to reinstate her as a flight attendant subsequent to her successful completion of a rehabilitation program, "substantially and materially breach[ing] the contract." (*Id*. ¶¶ 117–19.)

Plaintiff's breach of contract claim is without merit. Even if an unnamed Delta employee orally had offered Plaintiff reinstatement upon completion of an alcohol and drug program, such an agreement would not meet the standard of an enforceable contract under New York law, as a

cause of action for breach of contract cannot lie in a promise of at-will employment. *See*, *Boata v. Pfizer, Inc.*, 2010 WL 4878872, at *4 (S.D.N.Y. Dec. 1, 2010) (Under New York law, a Plaintiff "has no claim for breach of contract where the employment is at will."). "[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Gencarelli v. Cablevision Sys. Corp.*, 2012 WL 1031441, at *3 (E.D.N.Y. Mar. 27, 2012) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y. 2d 329, 333 (1987)). While a plaintiff may rebut the presumption of at-will employment "[b]y establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will," Plaintiff makes no such allegations here. *Gencarelli*, 2012 WL 1031441, at *3 (quoting *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001)). Thus, Plaintiff's employment with Delta falls within the parameters of at-will employment, and her breach of contract claim against Delta fails.

Moreover, New York law has an "explicit and difficult pleading burden" for a cause of action for breach of an implied contract of employment, and Plaintiff's vague assertions regarding an unnamed employee who offered her reinstatement do not meet this heightened standard. *Sabetay*, 69 N.Y. 2d at 334–35. Notably, "[o]ral assurances of continued employment are insufficient to create an implied employment contract." *Hughes v. Standard Chartered Bank, PLC*, 2010 WL 1644949, at *3 (S.D.N.Y. Apr. 14, 2010) (citing *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 85 n.2 (2d Cir. 2001)).

Accordingly, Plaintiff's breach of contract claim against Delta is dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss the complaint for failure to state a claim are granted in their entirety.  Accordingly, this action is dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
          March 31, 2019

_____/s/_____
DORA L. IRIZARRY
Chief Judge